UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, INC., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 3:01-CV-71<br>) (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | )<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This civil action is before the Court pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Orders [Docs. 137, 158] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the defendant's Motion in Limine to Exclude the Opinion Testimony of Alan Michael Hekking [Doc. 130] and Motion in Limine to Exclude the Opinion Testimony of Robert H. Koppe [Doc. 132], and the plaintiffs' Motion in Limine to Preclude the Introduction of Certain Testimony from TVA's Expert Witness Jerry L. Golden and the Admission of Related Information. [Doc. 156] On August 12, 2008, the parties appeared before the Court for a hearing on the instant motions. Attorneys Wade Davies, George E. Hays, and William J. Moore, III, appeared on behalf of the plaintiffs, and attorneys Frank H. Lancaster, Harriet A. Cooper, and Maria Victoria Gillen appeared on behalf of the defendant. After the hearing, the Court took the motions under advisement and they are now ripe for adjudication.

## I. Standard of Review

Both parties challenge the admissibility of the opposing party's expert(s) under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), with the defendant challenging the expert qualification of Alan Michael Hekking, the plaintiffs' expert on the issue of what constitutes routine maintenance, repair, and replacement, and Robert H. Koppe, the plaintiffs' expert on the issue of emissions increases, and the plaintiffs challenging the qualification of Jerry L. Golden, the defendant's expert on the issue of what constitutes routine maintenance, repair, and replacement. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the

2

correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153. With this framework in mind, the Court will now address the instant motions.

## II. Alan Michael Hekking

The defendant moves the Court to exclude the expert report and testimony of Alan Michael Hekking, the plaintiffs' expert on the issue of what constitutes routine maintenance, repair, and replacement. The defendant contends that Hekking's opinions are not reliable because they are predicated on a methodology of Hekking's own design, because his methodology is governed by no objective standards, does not emanate from his own field of study, and is rife with material errors. The defendant further argues that Hekking's opinions are not relevant because they stem from an enforcement initiative launched by the EPA several years after the events in issue. The plaintiffs oppose the motion, arguing that Hekking's opinions are reliable, relevant, and admissible.

As to the issues of relevance and the WEPCO test,[1] the Court notes that the issue of whether the WEPCO test applies in this matter, or whether some regulation or rule predating WEPCO should be applied, is a central issue before the District Court on summary judgment. Given that only the Daubert issues have been referred to the undersigned, the Court finds that it must leave the decision of what law will control to the District Court. Accordingly, the Court leaves the issue of the relevance of testimony relying on the WEPCO test to the District Court's determination.

As to the issue of reliability, the Court finds that Hekking's opinions are sufficiently reliable to satisfy Daubert. The Court finds that the methodology relied upon by Hekking was not created by Hekking, but instead is based in part on the common sense analysis set forth by the WEPCO test. The Court further finds that, while Hekking has not set forth a metric for determining what weight should be given to each of the WEPCO factors, in this instance, the absence of such a metric is a matter that affects the weight of Hekking's testimony, not its admissibility. The drafters of the Federal Rules of Evidence recognized that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony" Fed. R. Evid. 702 Adv. Comm. Note (2000), and the Court finds that Hekking's twenty plus years of experience in this area provides a sufficient basis for him to opine on the WEPCO test and the weight the factors should be given.

The defendant also argues that Hekking formed his opinions solely for the purpose of this litigation, arguing that Hekking did not utilize the WEPCO test when he previously worked for TVA. However, the Court finds that while Hekking may not have specifically utilized the WEPCO test during his time at TVA, Hekking's experience at TVA includes the areas of expertise necessary

---

[1] See Wisconsin Elec. Power Co. v. Reilly, 893 F.2d 901 (7th Cir. 1990) (setting forth the WEPCO test).

for him to opine on the factors of the WEPCO test, and thus Hekking's experience with TVA provides a reliable basis for the application of the WEPCO test. The defendant also takes issue with Hekking's application of the WEPCO factors, but the Court again finds that the defendant's arguments go to the weight of Hekking's testimony, not its admissibility.

As to the defendant's arguments as to the correctness of Hekking's opinions, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995). The Court finds that the methodology utilized by Hekking meets Daubert's reliability standard. To the extent that the defendant takes issue with Hekking's calculations and opinions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Finally, the defendants also argue that Hekking improperly aggregated the Economizer and Superheater projects in reaching his opinions. To the extent that such aggregation affects the relevance of Hekking's testimony, the Court leaves that issue for the District Court's consideration, as that issue appears to be intertwined with the other matters before the District Court on summary judgment.

Accordingly, for the reasons set forth above, the defendant's motion [Doc. 130] is hereby **DENIED in part**, to the extent that the Court finds that Hekking's opinions satisfy the requirements of Daubert, and leaving for the District Court's determination the issue of the relevance of Hekking's opinions which relate to the WEPCO test and the aggregation of the two projects at issue.

5

**III.     Robert H. Koppe**

The defendant next moves the Court to exclude the expert report and testimony of Robert H. Koppe, the plaintiffs' expert on the issue of emissions increases. The defendant contends that Koppe is not qualified to opine on this issue, arguing that he has no experience performing emissions calculations, has no training as to coal-fired power plants, and has no permitting experience as to coal-fired power plants. The defendant also argues that Koppe's testimony is irrelevant, because his calculations do not determine "actual emissions" as required by Tennessee regulations. The plaintiffs oppose the motion, arguing that Koppe is qualified to opine in this matter, that his testimony is relevant and reliable, and that his testimony should be admitted in this case.

With respect to the issue of relevance, the Court again finds that this issue is inextricably intertwined with the issues before the District Court on summary judgment. Accordingly, the Court leaves the issues of relevance and the method of calculation of emissions to the District Court.

With respect to the qualifications of Koppe, the Court finds that Koppe's thirty plus years in the engineering field provide Koppe with a level of experience sufficient to allow him to opine in this area. The Court finds that, given Koppe's extensive experience in this field, Koppe's lack of specialization in the field of coal-fired power plants is an issue that should affect the weight of his testimony, not its admissibility. In so ruling, the Court notes that Koppe has previously been qualified to offer expert testimony in other cases involving coal-fired power plants. See United States v. Cinergy Corp., No. 1:99-CV-1693 (S.D. Ind. filed April 11, 2008);[2] United States v. Ohio Edison Co., 276 F. Supp. 2d 829, 885 (S.D. Ohio 2003) (finding that Koppe's opinions provided "a reasonable and credible basis from which to evaluate the issue of increase in emissions."). The

---

[2]The Cinergy case is attached as Exhibit A to the plaintiff's response. [Doc. 143-2]

6

Court finds that Koppe's experience in the field of engineering, coupled with his prior admission as an expert on similar issues,[3] is sufficient to allow him to offer expert testimony in this matter. The Court further finds that Koppe's methodology is sufficiently reliable to allow him to testify in this matter, and any arguments in opposition to the same go to the weight of Koppe's testimony, not its admissibility.

Accordingly, the defendant's motion [Doc. 132] is **DENIED in part**, to the extent that the Court finds that Koppe's opinions satisfy the requirements of Daubert, and leaving for the District Court's determination the issue of the relevance of Koppe's various emissions calculations.

## IV.     Jerry L. Golden

The plaintiffs move the Court to exclude the expert report and testimony of Jerry L. Golden, the defendant's expert on the issue of what constitutes routine maintenance, repair, and replacement. The plaintiffs contend that the statistical information relied upon by Golden lacks sufficient indicia of accuracy, and thus argue that Golden's opinions based upon that data should be excluded. The plaintiffs contend that the data in question were gathered and screened by the law firm of Hunton and Williams, but further argue that Hunton and Williams lacked the expertise necessary to properly classify the various projects represented by the data, and thus argue that the data is flawed, because it might include dissimilar projects which should not be compared to the projects at issue. The defendant opposes the motion, arguing that the data is reliable, that the Environmental Protection Agency utilized the data in preparing reports for the President of the United States, that the data has been accepted by a federal court as a useful measurement of maintenance practices within the

---

[3]The Court acknowledges that Koppe was not retained in the cited cases to perform the same set of emissions calculations as in this matter, but the Court finds that Koppe's experience and training are sufficient to allow him to opine on these additional calculations as well.

7

industry, <u>United States v. Cinergy Corp.</u>, 495 F. Supp. 2d 909, 912-13 (S.D. Ind. 2007), and that Golden's opinions are based in large part on Golden's thirty years of experience as an engineer, and that the data in question played only a minor role in the formation of his opinions.

The Court finds the <u>Cinergy</u> case persuasive, and accordingly finds that the data in question are sufficiently reliable to allow the admission of Golden's testimony. To the extent that there is a question as to the accuracy of the data, the Court finds that, given the minor role played by the data in the formation of Golden's opinions, that such an issue goes to the weight of Golden's testimony, not its admissibility. Accordingly, the plaintiffs' motion [Doc. 156] is hereby **DENIED**.

**V.     Summary**

Accordingly, for the reasons set forth above, the defendant's motions [Docs. 130, 132] are hereby **DENIED in part**, to the extent set forth above, and the plaintiffs' motion [Doc. 156] is hereby **DENIED**.

**IT IS SO ORDERED.**

                                            **ENTER:**

                                            <u>s/ H. Bruce Guyton</u>
                                            United States Magistrate Judge